[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 5, 2009
THOMAS K. KAHN
CLERK

No. 08-17030
Non-Argument Calendar

_____

D. C. Docket No. 06-00313-CR-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

OTIS LORENZO SALLEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(August 5, 2009)

Before BARKETT, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

Defendant Otis Lorenzo Salley ("Salley") appeals the denial of his motion to

suppress evidence—specifically, over two kilograms of cocaine—seized from his vehicle following a traffic stop on August 1, 2006. Following the denial of his motion to suppress, Salley entered a guilty plea—conditioned on his ability to appeal the denial of his motion to suppress—to the charge of possession with intent to distribute 500 grams or more of cocaine hydrochloride, in violation of 21 U.S.C. § 841(a)(1). He was sentenced to 76 months in prison. On appeal, Salley argues that the evidence was obtained in violation of his Fourth Amendment right to be free from unreasonable searches and seizures. See U.S. Const. amend. IV. After review, we affirm.

## I. Factual Background

The magistrate judge conducted an evidentiary hearing and prepared a report and recommendation ("report"), recommending denial of Salley's motion to suppress. In the report, the magistrate judge found these facts, which the testimony in the hearing transcript supports.

At 11:52 p.m., on August 1, 2006, Lieutenant David Blige ("Officer Blige") of the Bryan County, Georgia Sheriff's Department stopped Salley's gold Chrysler 300 because the vehicle failed to remain in its lane and "weaved across the dividing line several times." Officer Blige asked Salley (the sole occupant) to get out of the car and to provide his driver's license and registration. Officer Blige

detected the strong odor of marijuana and asked Salley whether he was smoking marijuana. Blige testified that Salley seemed "nervous," was "sweating," and did not respond immediately when Blige asked him for his license and registration. Blige had to ask again for the paperwork. Salley produced the license and registration and denied the accusation of marijuana use.

After issuing a "verbal warning" for Salley's improper lane usage, Officer Blige asked Salley whether he would consent to a brief air scan by a drug dog.[1] Blige testified that he requested the air scan because he detected the strong scent of marijuana on Salley's person. The magistrate judge found that Salley consented to this procedure.

Corporal John Meachum ("Meachum") arrived on the scene within eight or nine minutes after Officer Blige initially stopped Salley's vehicle and two to three minutes after Salley consented to the air scan by the drug dog. Meachum had a drug dog in his vehicle. The dog performed the air scan and signaled that narcotics were present. A subsequent search of the vehicle revealed that a red cooler in the trunk of Salley's car contained over two kilograms of cocaine.

Salley moved to suppress the evidence of cocaine. He argued that Officer Blige lacked "reasonable suspicion" to detain him for the two to three minutes it

---

[1]An "air scan," as the parties use the phrase, appears to be nothing more than directing a drug dog to determine whether the scent of narcotics is present in a particular area.

took for the drug dog to arrive. The magistrate judge's report recommended that the motion to suppress be denied because the strong odor of marijuana, combined with Salley's nervous disposition and failure to immediately respond to Blige's request for license and registration, provided reasonable suspicion that warranted the additional detention and air scan by the drug dog. The district court adopted the report in full and denied Salley's motion to suppress. Salley now appeals.

## II. Discussion

Salley does not contest that Officer Blige had "probable cause" to stop his vehicle based on his suspicion that Salley had violated traffic laws. See Whren v. United States, 517 U.S. 806, 810, 116 S. Ct. 1769, 1772 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."). Rather, Salley argues that Blige lacked "reasonable suspicion" to detain him for any additional time after Blige issued the verbal warning. Specifically, Salley argues that Blige impermissibly detained him during the two to three minutes while the drug dog arrived and performed the air scan. Salley argues that: (1) the government offered no evidence that he actually possessed or was using marijuana, and (2) the absence of evidence that he actually used or possessed marijuana, combined with Blige's lack of credibility, means that "[j]ustice would not be served in allowing this

4

testimony to stand."

The government argues that, in addition to the strong smell of marijuana, Salley seemed "nervous" and "sweaty" and did not immediately respond to Blige's questions. Therefore, Blige's decision to detain Salley for a few extra moments was supported by "reasonable suspicion."

When reviewing a district court's denial of a motion to suppress, we review the fact-findings for clear error and the application of law to fact de novo. United States v. Ramirez, 476 F.3d 1231, 1235 (11th Cir. 2007). We construe all facts in the light most favorable to the prevailing party—in this case, the government. Id. at 1236.

"[W]e have consistently held that once an officer has briefly stopped a motor vehicle operator for the purpose of issuing a traffic violation (i.e., a ticket), the officer's continuing detention of the vehicle's occupants is authorized under the Fourth Amendment only if the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." United States v. Pruitt, 174 F.3d 1215, 1220 (11th Cir. 1999) (citation and quotation marks omitted). Therefore, the issue on appeal is whether the record, construed in the light most favorable to the government, supports the district court's conclusion that "reasonable suspicion" warranted the added

5

intrusion—in this case the slightly prolonged detention after the verbal warning. See United States v. Griffin, 109 F.3d 706, 707-08 (11th Cir. 1997). "When making a determination of reasonable suspicion, we must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." United States v. Perkins, 348 F.3d 965, 970 (11th Cir. 2003) (quotation marks and citations omitted).

Based on the totality of the circumstances, we cannot say that there is reversible error in the district court's denial of Salley's motion to suppress. First, Eleventh Circuit case law supports the district court's legal conclusions. This Court has found reasonable suspicion to support further detention based on, among other things, the "strong odor of marijuana." See Griffin, 109 F.3d at 708 (noting that odor of marijuana detected during traffic stop furnished reasonable suspicion justifying further detention and investigation of suspect).[2] And Salley does not cite any authority challenging the proposition that the strong scent of marijuana furnishes "reasonable suspicion" for continued detention. For example, Salley cites Perkins. 348 F.3d at 970. But Perkins says nothing about whether the smell

_____

[2]This Court has also found that the smell of marijuana has satisfied the higher "probable cause" standard. See United States v. Lueck, 678 F.2d 895, 903 (11th Cir. 1982) (noting that it is "clearly established that the recognizable smell of marijuana gives rise to probable cause supporting a warrantless search").

of marijuana provides "reasonable suspicion."[3]

Officer Blige's testimony that Salley seemed "nervous" and "sweaty" and that he failed to immediately respond to his questions would on its own be insufficient to support the additional detention and air scan. See Perkins, 348 F.3d at 971 ("In this Circuit, we have required more than the innocuous characteristics of nervousness, a habit of repeating questions, and an out-of-state license for giving rise to reasonable suspicion."). However, the record evidence here—that Blige smelled the strong odor of marijuana, combined with those factors—adequately supports the district court's conclusion that Blige had "reasonable suspicion" to warrant the additional detention and the air scan. See Griffin, 109 F.3d at 707-08.

Salley also implies that Officer Blige's testimony about whether he actually detected the scent of marijuana is not to be believed. But, on this record, we find no clear error in the magistrate judge's fact-finding, adopted by the district court, that Blige smelled the strong odor of marijuana on Salley's person. The magistrate judge's finding was based on Blige's in-court testimony, where the magistrate

---

[3]In Perkins, the "Government argue[d] that the totality of the following circumstances gave rise to a reasonable suspicion of drug trafficking: (1) Perkins' nervousness; (2) the 'odd behavior' of Perkins in repeating the questions Colston asked him; (3) Perkins' possession of a Florida driver's license while claiming to live in Montgomery, Alabama; and (4) the 'inconsistent' statements from Perkins and Scott with regard to whom they were going to see in Greenville, Alabama." 348 F.3d at 970. None of these justifications had anything to do with the smell of marijuana.

judge had an opportunity to make a credibility determination and to gauge Blige's

answers to what appears to have been a rigorous cross-examination conducted by

Salley's counsel.  See United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th

Cir. 2002) ("Credibility determinations are typically the province of the fact finder

because the fact finder personally observes the testimony and is thus in a better

position than a reviewing court to assess the credibility of witnesses."); United

States v. Holland, 874 F.2d 1470, 1473 (11th Cir. 1989) ("Credibility

determinations made by the district court are entitled to deference by a reviewing

court.").  Therefore, the district court's fact-findings are not clearly erroneous.[4]

After review, we affirm the district court's denial of Salley's motion to

suppress.

**AFFIRMED**.

---

[4]On appeal, Salley points out that after issuing the ticket, Officer Blige first said that Salley was free to go.  Blige's testimony was contradictory in this respect.  On the one hand Blige testified that he told Salley that he was free to go.  At another point during the hearing, he claims to have never made such a statement.  But it does not appear that Salley raised the issue of Officer Blige's truthfulness with respect to whether Blige detected the strong odor of marijuana either before the magistrate judge or in his objections to the report.  Rather, Salley argued that the absence of actual marijuana meant that Blige lacked "reasonable suspicion."  In any event, to the extent Salley claims that Blige's testimony lacked credibility as to the odor of marijuana, we note that whether Blige's testimony was credible was a decision for the fact-finder.  See, e.g., United States v. Beckles, 565 F.3d 832, 840 (11th Cir. 2009) (noting that, even in the face of contradictory testimony, a district court's credibility determination in favor of the contradicting party was "not clearly erroneous"); United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002).